(314 P.3d 883)

Nos. 109,388
109,389
109,390

BILLY J. STANLEY, *Appellant*, v. SHAWN SULLIVAN, SECRETARY OF THE KANSAS DEPARTMENT ON AGING AND DISABILITIES, *Appellee*.

 

Opinion filed December 6, 2013.

*Gerald E. Wells*, of Lawrence, for appellant.

*Corrine E. Johnson*, litigation counsel, of Kansas Department for Aging and Disability Services, for appellee.

Before BRUNS, P.J., ARNOLD-BURGER and POWELL, JJ.

BRUNS, J.: Billy J. Stanley, a civilly committed sexually violent predator, is a patient in the custody of the Secretary of the Kansas Department for Aging and Disability Services pursuant to the Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq.* During 2012, Stanley filed three separate petitions for writs of habeas corpus under K.S.A. 2012 Supp. 60-1501 in the Pawnee County District Court. Ultimately, the district court dismissed Stanley's petitions for failure to exhaust administrative remedies prior to seeking court intervention. On appeal, Stanley argues that the enactment of K.S.A. 2012 Supp. 59-29a24 excuses him from his obligation to exhaust administrative remedies prior to filing a petition seeking a writ of habeas corpus. Based on the language of the statutes in question, as well as upon the legislative history, we conclude that civilly committed sexually violent predators are still required to exhaust any applicable administrative remedies prior to seeking the extraordinary remedy of habeas corpus under K.S.A. 2012 Supp. 60-1501. Accordingly, we affirm the district court's dismissal of Stanley's petitions for writs of habeas corpus.

## FACTS

The facts of this case are not in dispute. During August 2012, Stanley—who is a patient in the Sexual Predator Treatment Program (SPTP) at Larned State Hospital—filed three petitions in Pawnee County District Court seeking writs of habeas corpus pursuant to K.S.A. 2012 Supp. 60-1501. The district court stayed each

of the habeas corpus actions for 90 days so that Stanley could exhaust his administrative remedies through the SPTP.

On January 7, 2013, the district court dismissed each of the habeas corpus petitions because Stanley had failed to timely exhaust administrative remedies. Stanley filed timely notices of appeal, and appellate counsel was appointed to represent him. Subsequently, on March 25, 2013, this court consolidated the three cases because they present the same issue on appeal.

## ANALYSIS

*Issue Presented*

The sole issue presented is whether the district court erred in dismissing Stanley's K.S.A. 2012 Supp. 60-1501 petitions for writs of habeas corpus for his failure to timely exhaust administrative remedies. Specifically, Stanley argues that K.S.A. 2012 Supp. 5929a24(d) eliminates any requirement that patients in the SPTP exhaust administrative remedies prior to the filing of a petition for writ of habeas corpus. Stanley contends that in enacting K.S.A. 2012 Supp. 59-29a24, the legislature intended to require patients in the SPTP to exhaust administrative remedies before filing all civil actions except habeas corpus against the State or its political officials. In response, the State contends that the legislature did not intend to exempt patients in the SPTP from the requirement that they exhaust any applicable administrative remedies prior to filing a petition for writ of habeas corpus under K.S.A. 2012 Supp. 60-1501.

On appeal, Stanley does not argue that appropriate administrative remedies were unavailable to him. He also does not argue that they failed to meet due process requirements, thereby denying him access to the courts. Accordingly, we do not address these issues in this decision. Likewise, because of the narrow issue presented in this case—whether K.S.A. 2012 Supp. 59-29a24(d) negates the exhaustion requirement for habeas corpus actions brought by SPTP patients—we express no opinion on the merits of Stanley's underlying claims nor do we determine the circumstances under which exhaustion of administrative remedies is appropriate.

*Standard of Review*

As the issue presented involves a matter of statutory interpretation, our review is unlimited. *Jeanes v. Bank of America,* 296 Kan. 870, 873, 295 P.3d 1045 (2013). The fundamental goal in statutory construction is to ascertain the intent of the legislature. We examine the plain meaning of the statutory language by giving common words their ordinary meaning. If the words used in a statute are unclear or ambiguous, we then look to legislative history or other background considerations to determine the legislature's intent. But even if the language of a statute is plain and unambiguous, we still must harmonize or reconcile various provisions of an act together to avoid statutory interpretations that would be unreasonable or render legislation meaningless. *Northern Natural Gas Co. v. ONEOK Field Services Co.,* 296 Kan. 906, 918, 296 P.3d 1106 (2013).

*Extraordinary Legal Remedy of Habeas Corpus*

The United States Constitution provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9. Similarly, the right to a writ of habeas corpus is protected in the Bill of Rights of the Kansas Constitution. Kan. Const. Bill of Rights, § 8. In fact, the writ of habeas corpus predates both the United States Constitution and the Kansas Constitution. See, *e.g.,* Wilkes, *From Oglethorpe to the Overthrow of the Confederacy: Habeas Corpus in Georgia, 1733-1865,* 45 Ga. L. Rev. 1015, 1022-23 (2011).

The Kansas Supreme Court has described a writ of habeas corpus as "an extraordinary legal remedy [that] should not be used when relief may be obtained by ordinary procedure." *Foster v. Maynard,* 222 Kan. 506, 513, 565 P.2d 285 (1977). Except for matters pertaining to sentencing covered by K.S.A. 60-1507, the statutory procedures required to obtain a writ of habeas corpus in Kansas are found in K.S.A. 60-1501 *et seq.* See *Safarik v. Bruce,* 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211, *rev. denied* 256 Kan. 996 (1994).

K.S.A. 2012 Supp. 60-1501(a) provides that "any person in this state who is detained, confined or restrained of liberty *on any pretense whatsoever* . . . may prosecute a writ of habeas corpus." (Emphasis added.) Moreover, "[p]roceedings on a petition for writ of habeas corpus filed pursuant to K.S.A. 60-1501 are not subject to ordinary rules of civil procedure." *Bankes v. Simmons*, 265 Kan. 341, Syl. ¶ 1, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998); see 5 Gard, Casad, & Mulligan, Kansas Law and Practice, Kansas C. Civ. Proc. Annot. § 60-1501 (5th ed. 2012). Hence, except in matters brought under K.S.A. 60-1507, the procedures of K.S.A. 2012 Supp. 60-1501 are to be used by all petitioners to obtain a writ of habeas corpus in Kansas.

*Development of Exhaustion Requirement in Kansas*

Kansas courts have recognized for many years the obligation of a person who is detained, confined, or restrained of liberty to exhaust any appropriate administrative remedies before seeking a writ of habeas corpus. See *Battrick v. State*, 267 Kan. 389, 398-99, 985 P.2d 707 (1999) (discussing the development of the exhaustion requirement for inmates filing habeas corpus petitions both prior to and after the enactment of K.S.A. 75-52,138 in 1994, which codified the common-law exhaustion requirement for inmates). As early as 1972, the Kansas Supreme Court expressly held—in a habeas corpus action brought by a detained inmate—that "[w]hen appropriate administrative procedures have been established then those remedies will be required to have been exhausted prior to resort to the courts." *Levier v. State*, 209 Kan. 442, 452, 497 P.2d 265 (1972).

In addition, our Supreme Court emphasized in *Levier* that

"disputed issues of fact respecting mistreatment of inmates should be determined administratively in a grievance procedure wherein the inmate is afforded the basic elements of due process, that is, notice and an opportunity to be heard in an orderly proceeding adapted to the nature of the case. [Citation omitted.] The particular type of administrative procedure to be employed should be left to the sound discretion of correctional authorities so as to accommodate the needs of the penal system as well as the interests of the inmates." 209 Kan. at 451.

Since *Levier*, numerous other Kansas cases have applied the common law to require inmates to exhaust appropriate adminis-

trative remedies prior to seeking a writ of habeas corpus under K.S.A. 60-1501. See *Case v. Crouse*, 210 Kan. 341, 342, 502 P.2d 785 (1972) (requiring an inmate to exhaust administrative remedies under the grievance procedures adopted by the state director of penal institutions); *Davis v. State*, 211 Kan. 257, 505 P.2d 293 (1973) ("In *Levier*, we suggested appropriate administrative procedures be established and the remedies required thereby be exhausted before there is a resort to the courts."); *Fletcher v. Nelson*, 253 Kan. 389, 393, 855 P.2d 940 (1993) ("Administrative remedies must be exhausted before turning to a court through a habeas corpus proceeding . . . .").

The obligation to exhaust other remedies prior to filing habeas corpus actions, however, is not limited to criminal inmates. Rather, the exhaustion requirement has been applied in habeas corpus actions brought by other persons who claim that their liberty has been unlawfully restrained. More than 25 years before *Levier*, in a habeas corpus action involving the custody of an adopted child, the Kansas Supreme Court invoked the exhaustion requirement and found that "[s]uch a rule is so well recognized that it does not require citation of authorities." *Wilcox v. Fisher*, 163 Kan. 74, 80, 180 P.2d 283 (1947). Thus, the exhaustion requirement is not merely a creature of statute nor is it based on the reason that a person is detained.

Significantly, in *Williams v. DesLauriers*, 38 Kan. App. 2d 629, Syl. ¶ 6, 172 P.3d 42 (2007), this court held that "[b]efore seeking judicial review in a K.S.A. 60-1501 proceeding, a [SPTP patient] must exhaust all available administrative remedies." In support of this finding, the panel in *Williams* cited to *Fletcher*, 253 Kan. 389, Syl. ¶ 3. We note, however, that a panel of this court subsequently found that "exhaustion is not required when . . . the constitutionality of an administrative rule in [the SPTP] is at issue." *Merryfield v. Kansas Social and Rehabilitation Services*, No. 102,384, 2009 WL 5206252, at *1 (Kan. App. 2009) (unpublished opinion). We also note that the Kansas Supreme Court has held that "[e]xhaustion of administrative remedies is not required when administrative remedies are inadequate or would serve no purpose." *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, Syl.

¶ 2, 24 P.3d 128 (2001). Again, this opinion does not address the issue of what administrative remedies may be appropriate nor do we decide the merits of Stanley's underlying claims.

*Statutory Interpretation of K.S.A. 2012 Supp. 59-29a24 and K.S.A. 2012 Supp. 60-1501*

The 2012 Kansas Legislature enacted K.S.A. 2012 Supp. 59-29a24 and amended K.S.A. 60-1501 in the same bill—House Substitute for Senate Bill 74. Section 1 of the bill enacted new statutory requirements that must be followed in civil actions filed by SPTP patients against the State, its officials, or its employees acting within the scope of their employment. At the same time, section 2 of the bill added a new provision to K.S.A. 60-1501 that addressed the time requirements for the filing of a petition for a writ of habeas corpus by an SPTP patient.

Specifically, section 1 of House Substitute for Senate Bill 74—codified at K.S.A. 2012 Supp. 59-29a24—provides:

"(a) Any patient in the custody of the secretary [for aging and disability] services pursuant to K.S.A. 59-29a01 *et seq.*, and amendments thereto, prior to filing any civil action naming as the defendant pursuant to the rules of civil procedure, the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary [for aging and disability] services or an employee of the department [for aging and disability] services, while such employee is engaged in the performance of such employee's duty, shall be required to have exhausted such patient's administrative remedies, established by procedures adopted pursuant to subsection (d) of K.S.A. 59-29a22, and amendments thereto, concerning such civil action. Upon filing a petition in a civil action, such patient shall file with such petition proof that the administrative remedies have been exhausted.

"(b) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that:

(1) The allegation of poverty is untrue, notwithstanding the fact that a filing fee, or any portion thereof has been paid; or

(2) the action or appeal:

(A) Is frivolous or malicious;

(B) fails to state a claim on which relief may be granted; or

(C) seeks monetary relief against a defendant who is immune from such relief.

"(c) In no event shall such patient bring a civil action or appeal a judgment in a civil action or proceeding under this section if such patient has, on three or more prior occasions, while in the custody of the secretary [for aging and disability] services pursuant to K.S.A. 59-29a01 *et seq.*, and amendments thereto, brought an action or appeal in a court of the state of Kansas or of the United States that

was dismissed on the grounds that it was frivolous, malicious or failed to state a claim upon which relief may be granted, unless the patient is under imminent danger of serious physical injury.

"(d) The provisions of this section shall not apply to a writ of habeas corpus."

Furthermore, section 2 of House Substitute for Senate Bill 74—codified at K.S.A. 2012 Supp. 60-1501(c)—provides:

"Except as provided in , and amendments thereto, a patient in the custody of the secretary [for aging and disability] services pursuant to *et seq.*, and amendments thereto, shall file a petition for writ pursuant to subsection (a) within 30 days from the date the action was final, but such time is extended during the pendency of the patient's timely attempts to exhaust such patient's administrative remedies."

It is undisputed that K.S.A. 2012 Supp. 59-29a24(a) codifies an exhaustion of administrative remedies requirement for patients in the SPTP filing civil actions against the State, its political subdivisions, its officers, or its employees. Likewise, it is undisputed that K.S.A. 2012 Supp. 59-29a24(b) provides various grounds for the dismissal of a civil action filed against the State. Furthermore, it is undisputed that K.S.A. 2012 Supp. 59-29a24(c) places restrictions on the number of civil actions or appeals that an SPTP patient may file "unless the patient is under imminent danger of serious physical injury."

The parties do, however, dispute the meaning of K.S.A. 2012 Supp. 59-29a24(d), which provides that "[t]he provisions of *this section* shall not apply to a writ of habeas corpus." (Emphasis added.) In particular, the parties cannot agree as to what the words "this section" refer. Sometimes, a statutory exception—like the one found in K.S.A. 2012 Supp. 59-29a24(d)—is intended to apply only to the immediately preceding section while other times such an exception is intended to apply to an entire statute or act. See 1A Singer & Singer, Statutes and Statutory Construction § 20:22 (7th ed. 2009). At the very least, legislative intent is difficult to ascertain when an exception uses vague references to another section or sections of a statute or act. See *State v. Casey*, 42 Kan. App. 2d 309, 315-19, 211 P.3d 847 (2009); *Meridian Oil v. N.M. Tax. & Rev. Dept.*, 122 N.M. 131, 133-35, 921 P.2d 327 (Ct. App. 1996).

It is possible—as Stanley suggests—that the legislature intended for none of the provisions of K.S.A. 2012 Supp. 59-29a24, including

the exhaustion of administrative remedies requirement found in K.S.A. 2012 Supp. 59-29a24(a), to apply to habeas corpus actions brought by SPTP patients under K.S.A. 2012 Supp. 60-1501. On the other hand, it is possible—as the State suggests—that the legislature intended only to exclude habeas corpus actions from the limitation on the number of civil actions that an SPTP patient can file, as set forth in K.S.A. 2012 Supp. 59-29a24(c). Compounding the uncertainty is the fact that at the same time—and in the same bill—that the legislature enacted K.S.A. 2012 Supp. 59-29a24, it also enacted K.S.A. 2012 Supp. 60-1501(c), which clearly contemplates the exhaustion of administrative remedies prior to SPTP patients filing habeas corpus actions.

Given this lack of clarity, we look to the legislative history to assist us in determining the legislature's intent in enacting K.S.A. 2012 Supp. 59-29a24 and K.S.A. 2012 Supp. 60-1501(c). See *Northern Natural Gas Co.*, 296 Kan. at 918. In determining the legislature's intent, we consider "the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various suggested interpretations." See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 4, 69 P.3d 1087 (2003). Here, we find that all of these considerations support the legislative intent suggested by the State.

In reviewing the legislative history, we see the bill that would eventually be passed by the 2012 legislature as House Substitute for Senate Bill 74 originated in the 2011 session as House Bill 2313. See Minutes, Sen. Comm. on Judiciary, March 16, 2012. As initially drafted, new section 1 of House Bill 2313 included only the statutory language that is now found in K.S.A. 2012 Supp. 59-29a24(a)-(c). In other words, the language now found in K.S.A. 2012 Supp. 59-29a24(d) was not included in the initial version of House Bill 2313. However, from the outset, section 2 of House Bill 2313 contained language amending K.S.A. 60-1501 to include SPTP patients and to provide them with an extension of the 30-day filing deadline while they are attempting to exhaust appropriate administrative remedies.

Early in 2012, the House Judiciary Committee passed an amendment to House Bill 2313. The amendment was intended to "clearly delineate that new section 1(c) [which is now codified in K.S.A. 2012 Supp. 59-29a24(c)] does not apply to habeas actions." Minutes, House Comm. on Judiciary, February 9, 2012 (H.B. 2313). Although the committee minutes reflect that the amendment was intended to be placed "in new section 1(c)," the amendment somehow ended up in new section 1(d) of House Bill 2313, and it ultimately found its way into K.S.A. 2012 Supp. 59-29a24(d). Nevertheless, this history clearly shows that the legislature intended for the exception now found in K.S.A. 2012 Supp. 59-29a24(d) to apply only to the limitations—now found in K.S.A. 2012 Supp. 59-29a24(c)—on the number of civil actions SPTP patients can file against the State.

Furthermore, we find nothing in the legislative history to suggest that the legislature intended to exempt SPTP patients from the requirement to exhaust administrative remedies prior to the filing of a habeas corpus action under K.S.A. 2012 Supp. 60-1501. In fact, a review of the legislative history reveals that one of the primary purposes of House Bill 2313 was to make it clear that SPTP patients—like others who claim to have been unlawfully restrained of liberty—must exhaust appropriate administrative remedies prior to seeking a writ of habeas corpus. It also appears likely that the legislature intended to clear up any confusion over the exhaustion requirement caused by the holding in *Merryfield*, 2009 WL 5206252, and similar appellate opinions. See *State v. Bee*, 288 Kan. 733, 738, 207 P.3d 244 (2009) (stating we presume the legislature acts with knowledge of the law).

Chief Judge Bruce T. Gatterman of the Pawnee County District Court—the county in which most of the civilly committed sexually violent predators are confined as patients—submitted written testimony to the House Judiciary Committee. He explained that the adoption of House Bill 2313 would provide "a clear expression of legislative intent *requiring exhaustion of administrative remedies prior to the filing of any habeas action.*" (Emphasis added.) Minutes, House Comm. on Judiciary, January 25, 2012 (H.B. 2313), attach. 7. According to Judge Gatterman, SPTP patients had

filed 116 habeas corpus actions in the Pawnee County District Court during 2011. Hence, he argued that requiring SPTP patients to exhaust administrative remedies before filing a habeas corpus action saves valuable judicial resources and that it allows for the resolution of claims "through an expedient and fair grievance procedure at the administrative level." Minutes, House Comm. on Judiciary, January 25, 2012 (H.B. 2313), attach. 7.

Similarly, Carl "Bill" Ossmann, then Chief Litigation Attorney at SRS and currently a judge of the Shawnee County District Court, testified in support of House Bill 2313. Ossmann noted that as compared to lawsuits or habeas corpus actions in the district court, administrative remedies can often be more efficient and economical in resolving the complaints of patients in the SPTP. He explained that if patients prevail at the administrative level, they will not need to go to the district court. And if not, "the exhaustion of administrative remedies results in a record which might be used by a district judge" to assist in resolution of a claim subsequently asserted in a habeas corpus action. Minutes, House Comm. on Judiciary, January 25, 2012 (H.B. 2313), attach. 5. In his testimony, Ossmann also noted that House Bill 2313 was modeled after K.S.A. 75-52,138, which codified the exhaustion of administrative remedies for criminal inmates who bring habeas corpus actions under K.S.A. 60-1501.

Dr. Austin T. DesLauriers, Clinical Program Director for the SPTP, also testified in support of House Bill 2313. Dr. DesLauriers explained that actions brought by patients in the SPTP in the district court were taking up the valuable time and resources of his staff. He recognized that SPTP patients "should be able to appeal to the [district court] if their rights are violated," but he also pointed out that responding to meritless claims filed in the district court was taking time "away from that which could be spent on the mission of the program, which is to provide quality treatment." Minutes, House Comm. on Judiciary, January 25, 2012 (H.B. 2313), attach. 6.

Dr. DesLauriers testified that there are two administrative processes available to address complaints by SPTP patients depending on the severity of the complaint. A multiple-layer grievance pro-

cedure deals with lower level complaints, such as if one patient took property from another patient. For more serious complaints, such as those dealing with rule violations, an assigned hearing officer listens to a patient's complaints and attempts to resolve the issue. If the SPTP patient is not satisfied with the hearing officer's resolution of the complaint, the patient can then take the case to higher levels of review within the program. Minutes, House Comm. on Judiciary, January 25, 2012 (H.B. 2313).

House Bill 2313, as amended by the House Judiciary Committee, passed the full House on February 23, 2012, and proceeded to the Senate. See House J. 2012, p. 1954. In a hearing held on March 15, 2012, the Senate Judiciary Committee received nearly identical testimony as that previously received by the House Judiciary Committee. Minutes, Senate Comm. on Judiciary, March 15, 2012. A few days later, the House Judiciary Committee recommended substituting House Bill 2313, without additional amendment, for Senate Bill 74. House J. 2012, p. 2182.

House Substitute for Senate Bill 74 unanimously passed the House on March 21, 2012. House J. 2012, p. 2259. Subsequently, on March 28, 2012, the Senate passed the final version of the bill. Sen. J. 2012, p. 2091. And on April 6, 2012, the Governor signed House Substitute for Senate Bill 74. L. 2012, ch. 90.

*Conclusion*

In light of the historical background of House Substitute for Senate Bill No. 74, the circumstances attending its passage, and the purpose to be accomplished, we find that the legislature clearly intended for SPTP patients to exhaust appropriate administrative remedies prior to filing civil actions—including habeas corpus actions under K.S.A. 2012 Supp. 60-1501—against the State. Moreover, based on the legislative history, we agree with the district court that the legislature intended for the language found in K.S.A. 2012 Supp. 59-29a24(d) to apply only to the filing restrictions set forth in K.S.A. 2012 Supp. 59-29a24(c).

We, therefore, conclude that the district court did not err in dismissing Stanley's petitions for writs of habeas corpus for failure to exhaust administrative remedies.

Affirmed.